FILED

**NOT FOR PUBLICATION**

AUG 11 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 08-30478 |
| Plaintiff - Appellee, | D.C. No. 3:07-CR-00437-BR-1 |
| v. | |
| RALPH RENE WILLIAMS, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted July 13, 2010
Portland, Oregon

Before: GOODWIN, PREGERSON and WARDLAW, Circuit Judges.

Ralph Rene Williams appeals his conviction and 120-month sentence for

bank robbery. He argues that his trial violated the Speedy Trial Act ("STA"), 18

U.S.C. § 3161 *et seq.*, and that his waiver of his right to counsel was not knowing,

intelligent, and unequivocal. We affirm.

_____

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

We review de novo "the district court's interpretation and application" of the STA "and review the district court's findings of facts for clear error." *United States v. Medina*, 524 F.3d 974, 982 (9th Cir. 2008). Under the STA, a criminal defendant "must be brought to trial within seventy days of the indictment or his initial appearance before a judicial officer, whichever is later." *United States v. Murillo*, 288 F.3d 1126, 1133 (9th Cir. 2002) (citing 18 U.S.C. § 3161(c)(1)). For pretrial motions that do not require a hearing, "the period from the date the motion was taken under advisement until the court rules on the motion" is excluded, "but no more than 30 days." *Medina*, 524 F.3d at 978-79 (citing *Henderson v. United States*, 476 U.S. 321, 329 (1986)). If the pretrial motion requires a hearing, the district court excludes "(i) the period from the date the motion was filed to the conclusion of the hearing, (ii) the period from the conclusion of the hearing until the date the district court receives all the submissions by counsel it needs to decide that motion, and (iii) the period from the last day of the period described in (i) or (ii), as applicable, until the court rules on the motion, but no more than 30 days." *Medina*, 524 F.3d at 979 (citations and internal quotation marks omitted).

Williams had filed motions to continue the time to file motions to stay administrative forfeiture, to dismiss the indictment, to have a *Franks v. Delaware*, 438 U.S. 154 (1978), hearing, and to have a *Faretta v. California*, 422 U.S. 806

(1975), hearing. The government had filed motions to continue the trial date and to compel Williams to produce a DNA sample. All of these motions involved responses from the other party and decisions by the district court, which was excludable time under the STA and prevented the trial from occurring on the originally set 70-day date. There was no clear error under the STA by the district court in allowing this excludable time within the period set for the original trial date.

In addition, the STA excludes

> [a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(8)(A) (2005). To exclude this period of delay, "the court must state such findings in the record, either orally or in writing, § 3161(h)(8)(A), by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2)" of the STA. *Medina*, 524 F.3d at 980 (citations and internal quotation marks omitted); *see United States v. Ramirez-Cortez*, 213 F.3d 1149, 1154 (9th Cir. 2000) (recognizing that an STA "'ends of justice' exclusion must be (1)

'specifically limited in time' and (2) 'justified on the record with reference to the facts *as of the time the delay is ordered.*'" (citation and alteration omitted)).

The district court repeatedly stated that it was using the "ends of justice" analysis in determining whether Williams's insistence on the original trial date outweighed the interests of justice and the public. The court concluded that the government's need to complete DNA and other forensic testing as well as to have two necessary witnesses testify at trial, who were unavailable for the originally set trial date, comported with the interest of justice. In addition, the government had engaged in plea negotiations within the originally set trial period as well as some forensic testing. Significantly, the court was dealing with both Williams's new bank-robbery indictment as well as his violation of conditions of his supervised release from his first bank-robbery conviction. There was no clear error in the district court's use of the "'ends of justice' exception" to the STA. *Murillo*, 288 F.3d at 1133. The district court merely observed that criminal cases in the district rarely go to trial at the first date set and did not use that observation as a basis for its "ends of justice" ruling. Accordingly, Williams has failed to meet his burden of proving that his trial was "not commenced 'within the time limit required by section 3161(c) as extended by section 3161(h).'" *Medina*, 524 F.3d at 982 (quoting 18 U.S.C. § 3162(a)(2)).

4

"We review the validity of a *Faretta* waiver, a mixed question of law and fact, de novo." *United States v. Erskine*, 355 F.3d 1161, 1166 (9th Cir. 2003). For "a defendant's *Faretta* waiver [to be] knowing and intelligent, the district court must insure that [the defendant] understands 1) the nature of the charges against him, 2) the possible penalties, and 3) the dangers and disadvantages of self-representation." *Id.* at 1167 (citation and internal quotation marks omitted). Although "we have never required district courts to recite a particular script when making their inquiry," the district court thoroughly explained these three factors to Williams. *Id.* at 1168. While he requested different counsel, which the court agreed to provide with the understanding that might further delay his trial, Williams definitively reaffirmed his determination to represent himself with his original attorney as standby counsel. *Faretta* permits standby counsel without violating an individual's right to self-representation. *McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984).

Williams concedes that the district court correctly advised him of the maximum sentence of 20 years to which he was subject for the crime of bank robbery but argues that the district court failed to advise him of the possibility of a consecutive 3-year sentence upon revocation of his supervised release. *See* 18 U.S.C. § 3583(e)(3) (permitting a sentencing court to impose a consecutive

5

sentence of up to 3 years of imprisonment upon revocation of supervised release for a Class B felony, such as bank robbery, under 18 U.S.C. §§ 2113(d), 3559(a)(2)). At the January 17, 2008, hearing, the district court advised Williams that he was subject to a separate sentence for violation of his supervised release, which Williams confirmed that he understood, when he asserted his right to self-representation. *See United States v. Gerritsen*, 571 F.3d 1001, 1010 (9th Cir. 2009) (recognizing that knowing and intelligent waiver is determined at the stage of the proceedings when the right to counsel is waived). Because "[a] statutory enhancement for a *prior conviction* is not an element of the crime [of conviction, i]t need not be alleged in the indictment and proven to a jury, but is determined by the court after the defendant has been convicted." *Id*. at 1009. Therefore, Williams's potential supervised-release revocation was not a part of his indictment for the bank robbery for which he was convicted in this case, because it was a consequence of his conviction and not the crime for which he was charged. After Williams's conviction for the bank robbery, the district court imposed a 2-year sentence consecutive to his sentence for bank robbery for violation of his supervised release. The district court did inform Williams that he was subject to a separate sentence for this consequential crime, but it could not tell him at the time of his waiver of his right to counsel what the sentence would be because it was

6

dependent on his conviction for bank robbery and the court's subsequent determination.

Regarding the dangers and disadvantages of self-representation, Williams reaffirmed to the district court at the January 18, 2008, hearing his final decision to represent himself with his original counsel as standby counsel after talking with his counsel and having considered his decision overnight. At that hearing, Williams confirmed that the court had advised him of the risks of self-representation and that he accepted those risks, including the same prosecutor from his previous conviction for bank robbery. The record shows that the district court diligently satisfied the prerequisites of a knowing and intelligent waiver of the right to self-representation by explaining to Williams "the nature of the charges against him, the possible penalties, and the risks of self-representation" and that Williams's assertion of his willingness to accept all the risks of self-representation was unequivocal. *United States v. Mendez-Sanchez*, 563 F.3d 935, 944 (9th Cir.), *cert. denied*, 130 S. Ct. 252 (2009). Therefore, the government met its "burden of establishing the legality of the waiver" of Williams's right to counsel. *Gerritsen*, 571 F.3d at 1006 (citation and internal quotation marks omitted).

**AFFIRMED.**

**United States v. Williams, No. 08-30478**

**Pregerson, J., concurring:**

I concur in the result of the memorandum disposition, but disagree with the disposition's analysis of Williams's Speedy Trial Act claim. The disposition holds that Williams's Speedy Trial Act claim fails because the parties' pre-trial motions and the district court's grant of the government's request for a continuance create enough excludable time to satisfy the 70-day statutory time limit. I agree that delays caused by both parties' pre-trial motions are excludable. These delays, taken together, place the date the trial commenced within the 70-day period. Therefore, there is no need the reach the question whether the delay resulting from the continuance is excludable under the "ends of justice" exclusion. Even if it were necessary to reach the ends of justice exclusion, I disagree that the exclusion applies in this case.

The period of delay that results from the court's grant of a continuance is only excludable from the 70-day period if granted "on the basis of [the court's] findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Although the Act provides that a court may consider "whether the failure to grant . . . a continuance . . . would deny . . . the attorney for the Government the reasonable time necessary for effective preparation," the Act

prohibits a court from granting a continuance because of "lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." 18 U.S.C. § 3161(h)(7)(B)-(C). No period of delay resulting for a continuance will be excluded unless the court "sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice [will be] served by [granting the continuance]." 18 U.S.C. § 3161(h)(7)(A).

Here, the government requested a continuance because it needed additional time to complete forensics tests, two of its necessary witnesses were unavailable, and the government had engaged in plea negotiations with defendant Williams. The district court granted the government's request for a continuance because the court concluded that the government diligently prepared for trial. The district court observed that criminal cases rarely go to trial and never go to trial on the first setting in the District of Oregon. Based on this observation,[1] the district court

---

[1] The majority contends that the district court did not use its observation regarding the rarity of criminal trials as a basis for its ends of justice ruling. The hearing transcript indicates otherwise:

> I'm going to make some general observations about how I've noted the criminal bar in this district to deal with proceedings. Not for purposes of suggesting in any way that Mr. Williams is held to any different standard, but to set a context for what I think has become the reasonable expectation of the criminal bar here: the prosecutors and defenders.
> As I noted earlier on the record, the vast majority of all our criminal

(continued...)

2

found that the government reasonably deferred expensive and time-consuming forensics testing until after Williams, through his counsel, advised the government that he would not accept the government's plea bargain and intended to proceed to trial on the first setting. Additionally, the district court found that the government acted diligently because it began to pursue its forensics testing within the 70-day period.

---

[1](...continued)
cases resolve by – in manners other than a jury trial. The vast majority resolve either by a diversion agreement, dismissal by the Government voluntarily, some form of plea agreement.

...

I can't think of one case that went to trial on its first setting, and I haven't been able to find one, when I learned of this issue.

...

And the real legal question then becomes whether the Government . . . can be accused of a lack of diligence in preparing for trial for failing to obtain witnesses by waiting [to receive] this clear signal from defense counsel to complete its trial preparation.

The fact of the matters is [that] prosecutors, like the defenders– again, as a matter of common practice, sometimes defer certain costs, certain time consuming activities, in the interests of avoiding incurring unnecessary expense or delay for matters that might not be needed. Certain kinds of preparation isn't expected unless a case is going to trial.

So, really, the issue is whether the Government, in assuming until told otherwise that the case was not . . . going to go to trial on the first setting, was somehow unduly diligent in violation of sub – of Chapter C.

I don't find that to be the case here. It is clear that issues of a DNA sample and issues of resolution were being pursued by the Government within the 70-day time period.

...

I am therefore granting the motion.

The court's findings were not sufficient to grant a continuance to serve the ends of justice because the government was not diligent in preparing for trial. The government had the evidence it needed to conduct the necessary forensics tests several months before trial, but delayed doing so until it was convinced that Williams intended to exercise his constitutional right to trial.

The district court's observation that criminal defendants in the District of Oregon rarely go to trial and typically plead guilty should not excuse the government's failure to diligently prepare for trial within the 70-day period mandated by Congress. As a practical matter, the government's charging authority exerts pressure on criminal defendants to forego their constitutional right to a jury trial and to plead guilty early in the proceedings. When a defendant does not plead guilty within the time limits imposed by the government, and instead chooses to put the government to its proof, he may find that the indictment has been amended to charge additional offenses which could result in the imposition of a more severe sentence. Such practices should not be condoned. Nor should we condone the notion that the government benefits from such practices by gaining additional time to prepare for trial when a defendant fails to succumb to the pressure to plead guilty. A defendant should not lose the benefits of the Speedy Trial Act just because he exercises his constitutional right to a trial.

4

Moreover, the fact that the government *began* to pursue its forensics testing within the 70-day period does not excuse the government's lack of diligence in preparing for trial. The plain language of the Speedy Trial Act requires that a defendant receive a trial within 70 days and does not provide an exception just because the government *begins* trial preparation within that period. 18 U.S.C. § 3161(c)(1).

It is important to bear in mind that before granting a continuance that would delay a criminal trial beyond the 70-day period, the Speedy Trial Act requires that the trial court find that the ends of justice will be served. 18 U.S.C. § 3161(h)(7)(A). The district court provided no legitimate findings on the record to justify granting the government's request for a continuance to serve the ends of justice. Accordingly, the delay resulting from the continuance should not be excluded from the 70-day period. Nevertheless, Williams's rights under the Speedy Trial Act were not violated because the pre-trial motions created more than enough excludable time to satisfy the Act. Therefore, there was no need to reach the question whether the ends of justice exclusion applies. That discussion, I suggest, is dicta.