MEMORANDUM*
Ralph Rene Williams appeals his conviction and 120-month sentence for bank robbery. He argues that his trial violated the Speedy Trial Act (“STA”), 18 U.S.C. § 3161 et seq., and that his waiver of his right to counsel was not knowing, intelligent, and unequivocal. We affirm.
We review de novo “the district court’s interpretation and application” of the STA “and review the district court’s findings of facts for clear error.” United States v. Medina, 524 F.3d 974, 982 (9th Cir.2008). Under the STA, a criminal defendant “must be brought to trial within *677 seventy days of the indictment or his initial appearance before a judicial officer, whichever is later.” United States v. Murillo, 288 F.3d 1126, 1133 (9th Cir.2002) (citing 18 U.S.C. § 3161(c)(1)). For pretrial motions that do not require a hearing, “the period from the date the motion was taken under advisement until the court rules on the motion” is excluded, “but no more than 30 days.” Medina, 524 F.3d at 978-79 (citing Henderson v. United States, 476 U.S. 321, 329, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986)). If the pretrial motion requires a hearing, the district court excludes “(i) the period from the date the motion was filed to the conclusion of the hearing, (ii) the period from the conclusion of the hearing until the date the district court receives all the submissions by counsel it needs to decide that motion, and (iii) the period from the last day of the period described in (i) or (ii), as applicable, until the court rules on the motion, but no more than 30 days.” Medina, 524 F.3d at 979 (citations and internal quotation marks omitted).
Williams had filed motions to continue the time to file motions to stay administrative forfeiture, to dismiss the indictment, to have a Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), hearing, and to have a Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), hearing. The government had filed motions to continue the' trial date and to compel Williams to produce a DNA sample. All of these motions involved responses from the other party and decisions by the district court, which was excludable time under the STA and prevented the trial from occurring on the originally set 70-day date. There was no clear error under the STA by the district court in allowing this excludable time within the period set for the original trial date.
In addition, the STA excludes
[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.
18 U.S.C. § 3161(h)(8)(A) (2005). To exclude this period of delay, “the court must state such findings in the record, either orally or in writing, § 3161(h)(8)(A), by the time a district court rules on a defendant’s motion to dismiss under § 3162(a)(2)” of the STA. Medina, 524 F.3d at 980 (citations and internal quotation marks omitted); see United States v. Ramirez-Cortez, 213 F.3d 1149, 1154 (9th Cir.2000) (recognizing that an STA “ ‘ends of justice’ exclusion must be (1) ‘specifically limited in time’ and (2) ‘justified on the record with reference to the facts as of the time the delay is ordered.’ ” (citation and alteration omitted)).
The district court repeatedly stated that it was using the “ends of justice” analysis in determining whether Williams’s insistence on the original trial date outweighed the interests of justice and the public. The court concluded that the government’s need to complete DNA and other forensic testing as well as to have two necessary witnesses testify at trial, who were unavailable for the originally set trial date, comported with the interest of justice. In addition, the government had engaged in plea negotiations within the originally set trial period as well as some forensic testing. Significantly, the court was dealing with both Williams’s new bank-robbery indictment as well as his violation of conditions of his supervised release from his first bank-robbery conviction. There was *678 no clear error in the district court’s use of the “ ‘ends of justice’ exception” to the STA. Murillo, 288 F.3d at 1133. The district court merely observed that criminal cases in the district rarely go to trial at the first date set and did not use that observation as a basis for its “ends of justice” ruling. Accordingly, Williams has failed to meet his burden of proving that his trial was “not commenced ‘within the time limit required by section 3161(c) as extended by section 3161(h).’ ” Medina, 524 F.3d at 982 (quoting 18 U.S.C. § 3162(a)(2)).
‘We review the validity of a Faretta waiver, a mixed question of law and fact, de novo.” United States v. Erskine, 355 F.3d 1161, 1166 (9th Cir.2004). For “a defendant’s Faretta waiver [to be] knowing and intelligent, the district court must insure that [the defendant] understands 1) the nature of the charges against him, 2) the possible penalties, and 3) the dangers and disadvantages of self-representation.” Id. at 1167 (citation and internal quotation marks omitted). Although “we have never required district courts to recite a particular script when making their inquiry,” the district court thoroughly explained these three factors to Williams. Id. at 1168. While he requested different counsel, which the court agreed to provide with the understanding that might further delay his trial, Williams definitively reaffirmed his determination to represent himself with his original attorney as standby counsel. Faretta permits standby counsel without violating an individual’s right to self-representation. McKaskle v. Wiggins, 465 U.S. 168, 177, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).
Williams concedes that the district court correctly advised him of the maximum sentence of 20 years to which he was subject for the crime of bank robbery but argues that the district court failed to advise him of the possibility of a consecutive 3-year sentence upon revocation of his supervised release. See 18 U.S.C. § 3583(e)(3) (permitting a sentencing court to impose a consecutive sentence of up to 3 years of imprisonment upon revocation of supervised release for a Class B felony, such as bank robbery, under 18 U.S.C. §§ 2113(d), 3559(a)(2)). At the January 17, 2008, hearing, the district court advised Williams that he was subject to a separate sentence for violation of his supervised release, which Williams confirmed that he understood, when he asserted his right to self-representation. See United States v. Gerritsen, 571 F.3d 1001, 1010 (9th Cir.2009) (recognizing that knowing and intelligent waiver is determined at the stage of the proceedings when the right to counsel is waived). Because “[a] statutory enhancement for a prior conviction is not an element of the crime [of conviction, i]t need not be alleged in the indictment and proven to a jury, but is determined by the court after the defendant has been convicted.” Id. at 1009. Therefore, Williams’s potential supervised-release revocation was not a part of his indictment for the bank robbery for which he was convicted in this case, because it was a consequence of his conviction and not the crime for which he was charged. After Williams’s conviction for the bank robbery, the district court imposed a 2-year sentence consecutive to his sentence for bank robbery for violation of his supervised release. The district court did inform Williams that he was subject to a separate sentence for this consequential crime, but it could not tell him at the time of his waiver of his right to counsel what the sentence would be because it was dependent on his conviction for bank robbery and the court’s subsequent determination.
Regarding the dangers and disadvantages of self-representation, Williams reaffirmed to the district court at the January *679 18, 2008, hearing his final decision to represent himself with his original counsel as standby counsel after talking with his counsel and having considered his decision overnight. At that hearing, Williams confirmed that the court had advised him of the risks of self-representation and that he accepted those risks, including the same prosecutor from his previous conviction for bank robbery. The record shows that the district court diligently satisfied the prerequisites of a knowing and intelligent waiver of the right to self-representation by explaining to Williams “the nature of the charges against him, the possible penalties, and the risks of self-representation” and that Williams’s assertion of his willingness to accept all the risks of self-representation was unequivocal. United States v. Mendez-Sanchez, 563 F.3d 935, 944 (9th Cir.), cert. denied, — U.S. -, 130 S.Ct. 252, 175 L.Ed.2d 172 (2009). Therefore, the government met its “burden of establishing the legality of the waiver” of Williams’s right to counsel. Gerritsen, 571 F.3d at 1006 (citation and internal quotation marks omitted).
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.