**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ARMIS ARRENDONDO,
            *Petitioner-Appellant*,

v.

DWIGHT NEVEN, Warden;
ATTORNEY GENERAL OF THE STATE
OF NEVADA,
            *Respondents-Appellees*.

No. 11-15581

D.C. No.
2:07-cv-01312-
JCM-GWF

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted
July 8, 2013—San Francisco, California

Filed August 18, 2014

Before: Ferdinand F. Fernandez, Richard A. Paez,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon;
Concurrence by Judge Fernandez

# SUMMARY[*]

## Criminal Law

The panel affirmed the district court's (1) denial, on the merits, of a claim of invalid waiver of the right to counsel and (2) dismissal as unexhausted of a claim of denial of the use of compulsory process, in Nevada state prisoner Armis Arrendondo's habeas corpus petition pursuant to 28 U.S.C. § 2254.

The panel held that it was not unreasonable for the Nevada Supreme Court to conclude that Arrendondo waived his right to counsel knowingly and intelligently, where he was carefully advised of the procedural risks of foregoing representation of counsel, and also knew of his substantial penal exposure under the charges already filed. The panel held that Arrendondo's claim that his waiver of counsel was involuntary fails for lack of proof because he has not established that he was required to choose between constitutionally inadequate counsel and self-representation.

The panel held that the district court properly dismissed Arrendondo's compulsory-process claim as unexhausted, for failure to present an underlying federal theory, where Arrendondo argued and cited Nevada state law alone when he asserted, in the Nevada Supreme Court, that the trial court erred in refusing him adequate time to produce his witnesses. The panel concluded that Arrendondo's failure to bring a state post-conviction petition raising either his federal

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

compulsory-process claim on the merits, or a claim of ineffective assistance of appellate counsel with respect to the compulsory-process issue, bars this court's consideration of his compulsory-process claim.

Judge Fernandez concurred in the result, but wrote that he is not willing to run the risk of unintended consequences that comes with saying too much, and therefore did not join in the majority's divagations and unnecessary assertions.

---

## COUNSEL

Heather Fraley (argued), Assistant Federal Public Defender; Rene L. Valladares, Federal Public Defender; Paul G. Turner, Assistant Federal Public Defender; Danice Arbor Johnson, Research & Writing Specialist, Office of the Federal Public Defender, Las Vegas, Nevada, for Petitioner-Appellant.

Karen A. Whelan (argued), Deputy Attorney General; Catherine Cortez Masto, Attorney General, Office of the Attorney General, Las Vegas, Nevada, for Respondents-Appellees.

**OPINION**

BERZON, Circuit Judge:

Armis Arrendondo represented himself against theft charges at trial and was sentenced under Nevada's habitual criminal statute, Nev. Rev. Stat. § 207.010, to two concurrent life sentences, with the possibility of parole after ten years. He contested his continued detention via a petition for habeas corpus under 28 U.S.C. § 2254, and now appeals the district court's (1) denial, on the merits, of his claim of invalid waiver of his right to counsel and (2) dismissal as unexhausted of his claim of denial of the use of compulsory process. Compelled by the statutory limits on our habeas corpus review of state convictions, we affirm.

**I.**

In September 2003, a Las Vegas homeowner returned from a vacation in Colorado to find his residence ransacked, several of his possessions missing, and his Winnebago motor home gone from its garage. The ensuing investigation led authorities to Arrendondo. Nevada indicted him on one count of possession of a stolen vehicle and another of possession of stolen property. *See* Nev. Rev. Stat. §§ 205.273, 205.275.

At Arrendondo's arraignment, he pleaded not guilty. In the months that followed, several public defenders represented Arrendondo in pre-trial proceedings. Public defender Drew Christensen represented him at arraignment. Several weeks later, at a hearing on Arrendondo's motion for release, public defender Delbert Martin entered an appearance. Public defender Victor Austin was then appointed to represent Arrendondo, but at several subsequent

calendar calls public defender Lynn Avants appeared instead of Austin.

Arrendondo grew dissatisfied with the quality of representation provided him by the public defender's office. At the second of the two calendar calls at which Avants appeared, Arrendondo expressed frustration that he had not met or been represented in court by Austin, his appointed lawyer. The court ordered Austin "to be prepared for [t]rial or another Public Defender will be assigned."

Approximately two and a half months after his arraignment, Arrendondo filed a handwritten Motion to Dismiss Counsel and Appointment of Alternate Counsel. In it, he alleged that his appointed attorney, "Victor Osten [sic]," had "refus[ed] or fail[ed] to communicate and/or visit" him in jail; had routinely missed court dates; and had "failed to assign an investigator to gather information." Arrendondo concluded by stating that "clearly, a conflict of interest now exist[s] between counsel/client (defendant)." At a subsequent hearing on the matter, Austin explained that Arrendondo had not complied with Austin's request to reveal the names and addresses of potential witnesses, a representation Arrendondo disputed. It was this failure to furnish names and addresses, Austin continued, that explained his unwillingness to appoint an investigator. Arrendondo, in turn, demanded "competent counsel to represent me because it just seems like he's absent-minded. I tell him one thing and two minutes later he forgets what I told him."

The court denied Arrendondo's motion for new counsel. Nonetheless, for reasons not apparent from the record, public defender Kristen M. Lynch replaced Austin as Arrendondo's attorney.

Over half a year later Arrendondo filed a second handwritten Motion to Dismiss Counsel. That motion alleged that Lynch had missed a court date; had "fail[ed] to file pretrial motions, writs, or petitions" in support of his case; and had "refus[ed] or fail[ed] to communicate and/or visit" Arrenondo in jail. It continued:

> Lynch (Public Defender) and others like her are only interested in railroading the defendant and/or having the defendant sign a plea agreement. There is definitely a conflict of interest here. Its [sic] like having a nemesis in charge of ensuring that justice is done. The only fair remedy is to have a state appointed attorney assigned to this case, instead of a public defender.

The motion also sought to permit Arrendondo to proceed pro se.

At a hearing held in response to Arrendondo's motion, at which public defender Lynn Avants appeared rather than Lynch, the court canvassed Arrendondo to determine whether he sought to waive his right to counsel and, if so, whether he was doing so knowingly, intelligently, and voluntarily:

| Court: | . . . . Do you want to represent yourself or not? |
|---|---|
| Defendant: | I believe, um, I would need standby counsel. |
| Court: | We don't do that, in most instances. This certainly |

wouldn't be one. Maybe in a murder case I might concede. I don't know. I don't typically do that.

Defendant: When it comes to posing viable objections or proper arguments, you know, an attorney who's been practicing every day, um, obviously would do a much better job than myself.

Court: Do you want to let them do their job or do it yourself?

Defendant: I believe I can prove my innocence. With the assistance of counsel, of course, it will be much easier.

Court: Do you want to go ahead and let your attorney assist you?

Defendant: Will he be representing me?

Court: Are you the attorney of record?

Mr. Avants: No. It's Ms. Lynch.

Court: It's Ms. Lynch.

Defendant: I cannot. No way.

Court:          Let's get on with it here.  Do
                you want to represent
                yourself?

Defendant:      Absolutely.

Court:          You don't have to say
                anything more.  You've made
                your decision?

Defendant:      Between incompetent counsel
                or self-representation?

Court:          We don't have the whole day
                to spend here.

. . . .

Court:          You prefer to take the
                disadvantage of not having full
                knowledge of the law and
                letting some prosecutor
                perhaps take advantage of you
                in that regard.  Is that your
                thinking?

Defendant:      This is a situation — it's
                between incompetent counsel,
                the ineffective assistance of
                counsel.

Court:          We're not getting into that.  I
                want to know if you want to
                represent yourself.  I don't

> care why. I want you to
> realize you're up against a lot
> of problems here.

Defendant: I have no other choice,
apparently.

The court advised Arrendondo that proceeding pro se was "unwise"; that he would "have to adhere to the same procedural rules as the lawyers"; that he could not complain of ineffective assistance of counsel on appeal; that the state would be represented by an experienced prosecutor; that he would not receive special library privileges at the jail; that his legal ignorance would "give the prosecutor an advantage"; and that, if he testified, he would have difficulty arguing his own credibility before the jury. Arrendondo acknowledged that he understood each of these statements.

The court then outlined the elements of the crimes of which Arrendondo was accused and inquired as to Arrendondo's knowledge of possible defenses. The court also reviewed the possible penalties carried by a conviction:

Court: You understand the penalties
that are possible here?

Defendant: I believe it carries one to six.

Court: Possession of stolen vehicle is
one to 10 years in prison and
as much as a $10,000 fine.
Possession of stolen property
over $2,500 is one to 10 years
in prison and a $10,000 fine.

> If it's between 250 and 2,500
> dollars, I believe it's a C
> felony, which is one to five,
> and a $10,000 fine. If it's
> under $250, it's a
> misdemeanor. Do you
> understand that?

Defendant:    Yes.

The court then found that Arrendondo had "knowingly and freely and voluntarily waiv[ed]" his right to counsel and granted his motion to proceed pro se.

Before trial, Arrendondo filed a Notice of Alibi Witnesses, listing twelve individuals who would allegedly testify on his behalf. Although Arrendondo included the addresses and telephone numbers of seven of these witnesses, he failed to provide full contact information for the rest.

At trial, at least two of Arrendondo's witnesses did not appear. Arrendondo did not have their "subpoena returns" because the subpoenas "went out a little late." As he explained, "I wanted to schedule this — it was Thursday, and I had no idea we were going to trial today . . . . I thought I was just picking the jury today." At 5:15 PM that day, the court adjourned. It instructed Arrendondo to produce his absent witnesses at 10:00 AM the following morning. Those witnesses did not appear at the appointed hour.

The jury convicted Arrendondo on both counts. Days later, the state filed a Notice of Intent to Seek Punishment as a Habitual Criminal under Nev. Rev. Stat. § 207.010, on the basis of four prior convictions. For a felon previously

convicted of three felonies, § 207.010(b) prescribes any of three possible punishments, the most severe of which is life without the possibility of parole. The court sentenced Arrendondo to two concurrent life sentences, with the possibility of parole after ten years.

Arrendondo appealed to the Nevada Supreme Court. That court ordered appointment of counsel, and Marvin L. Longabaugh was selected to represent Arrendondo.

In his briefs before the Nevada Supreme Court, Arrendondo's counsel pressed three claims, two of which are relevant here: He argued that (1) "the State's failure to advise the district court that Arrendondo might be charged as a habitual criminal made Arrendondo's waiver of counsel invalid"; and (2) the trial court denied Arrendondo "adequate time to produce his trial witnesses."

After Longabaugh filed Arrendondo's opening brief but before receiving the state's answering brief, Arrendondo wrote a letter to Longabaugh expressing concerns about his appeal. That letter is not included in the record, but Longabaugh's written response is. In it, Longabaugh explains that the appeal

> focuses on errors that the district court made during your case. If we were to present these constitutional issues at this time, you would be waiving your ability to appeal these issues through your habeas corpus petition. Consequently, we did not address these possible federal constitutional violations because we want to preserve your right to

argue them when and if you seek habeas
relief.

While the appeal was pending, Arrendondo filed a hand-
written, pro se Motion to Dismiss Counsel and Appointment
of Alternate Counsel. In it, he alleged that Longabaugh had
failed to raise several claims. Included among these
grievances was the assertion that Longabaugh had refused to
substantiate Arrendondo's inability to produce witnesses by
appending stamped subpoenas as exhibits to the appellate
briefs. The Nevada Supreme Court denied the motion.

Three months later, the Nevada Supreme Court issued its
decision on Arrendondo's appeal. It affirmed the validity of
his waiver of counsel. "Although the district court indicated
that Arrendondo would face a maximum of twenty years if
convicted, rather than life," the court reasoned, "the otherwise
extensive canvass of Arrendondo demonstrated that he
understood the dangers and disadvantages of self-
representation." The Nevada Supreme Court also noted that
when Arrendondo waived his right to counsel, the state had
not yet filed notice that it would seek sentencing under
Nevada's habitual criminal statute. Separately, the court
affirmed that Arrendondo had been granted adequate time at
trial to produce his witnesses.

Without first filing a state post-conviction petition,
Arrendondo filed a federal habeas petition. That petition was
dismissed without prejudice for reasons unexplained in the
record. This second pro se federal habeas petition followed.
In it, Arrendondo argued that his waiver of counsel was
invalid, because it was neither knowing and intelligent nor
voluntary. He also asserted denial of his right to compulsory
process.

The district court dismissed Arrendondo's denial of compulsory process claim on exhaustion grounds. Because of the unexhausted claims, the district court declared the petition "mixed" and thus subject to dismissal, *see Rose v. Lundy*, 455 U.S. 509, 510 (1982), but offered Arrendondo an opportunity to cure the problem prior to dismissal. Arrendondo thereupon accepted the district court's invitation to abandon the compulsory process claim and proceeded on his remaining ground for relief, that his waiver of counsel was invalid. In a later ruling, the district court denied that waiver claim on the merits, reasoning that Arrendondo's "waiver was knowing and intelligent" and that the Nevada Supreme Court's ruling "was not contrary to United States Supreme Court precedent."

This appeal followed. A Certificate of Appealability was granted on both the validity of Arrendondo's waiver of counsel and the determination that Arrendondo's compulsory process claim was unexhausted. We ordered counsel appointed for the appeal.

## II.

A criminal defendant may waive his Sixth Amendment right "to have the Assistance of Counsel for his defence," U.S. Const. amend. VI, only if he acts "knowingly and intelligently," with full awareness of the "dangers and disadvantages of self-representation." *Faretta v. California*, 422 U.S. 806, 835 (1975); *accord Patterson v. Illinois*, 487 U.S. 285, 292 (1988). The *Faretta* doctrine polices the border between "two correlative and mutually exclusive Sixth Amendment rights: the right to have counsel, on one hand, and the right to refuse counsel and represent [oneself], on the

other." *United States v. Gerritsen*, 571 F.3d 1001, 1007 (9th Cir. 2009).

Arrendondo argues that his waiver of counsel was neither "knowing and intelligent" nor voluntary. Because the Supreme Court of Nevada has already rejected Arrendondo's claim on the merits, the deferential standard codified at 28 U.S.C. § 2254(d)(1) governs our review of Arrendondo's petition.[1] Arrendondo thus must demonstrate that the Nevada Supreme Court's decision (1) was "contrary to" clearly established federal law as determined by the United States Supreme Court or (2) "involved an unreasonable application of such law." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (internal quotation marks omitted). We review de novo the district court's application of this standard. *See, e.g.*, *Smith v. Swarthout*, 742 F.3d 885, 892 (9th Cir. 2014).

### A.

To prove that his waiver of counsel was not "knowing and intelligent," Arrendondo advances a pair of related arguments. He first attributes error to the trial court's failure to discharge its "duty to ensure that an accused who sought to proceed pro se was advised of the range of possible punishments." Elsewhere, Arrendondo switches tacks, asserting that his colloquy with the trial court demonstrates that he "lacked the knowledge that he was facing a sentence of life in prison if convicted." Neither argument entitles

---

[1] Arrendondo does not contend that the Nevada Supreme Court's ruling rested on unreasonable factfinding, so 28 U.S.C. § 2254(d)(2) — permitting relief where the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" — is inapplicable.

Arrendondo to habeas relief, but the latter comes closer to the mark than the former.

1.    As to Arrendondo's first argument: No clearly established Supreme Court case law requires trial courts to apprise defendants in any particular form of the risks of proceeding to trial pro se.  Under the governing Supreme Court precedents, so long as "the record . . . establish[es] that '[the defendant] knows what he is doing and his choice is made with eyes open,'" the waiver of counsel is valid. *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).  The Supreme Court has accordingly declined to "prescribe[] any formula or script to be read to a defendant who states that he elects to proceed without counsel."  *Iowa v. Tovar*, 541 U.S. 77, 88 (2004).

In direct appeals, this Court has noted that "it is 'only the rare case in which an adequate waiver will be found on the record in the absence of a specific inquiry by the trial judge,'" *Gerritsen*, 571 F.3d at 1008 (quoting *United States v. Balough*, 820 F.2d 1485, 1488 (9th Cir. 1987)), and that "'[w]e prefer trial courts to simplify our review by explaining the risks of self-representation to the accused," *id.* (quoting *United States v. Kimmel*, 672 F.2d 720, 722 (9th Cir. 1982)).  Still, "the failure of the district court to engage in a colloquy with the defendant cannot itself be reversible error. . . . '[B]ecause the test concerns what the accused understood rather than what the court said or understood, explanations are not required.'"  *Id.* (quoting *Kimmel*, 672 F.2d at 722).

In sum, Arrendondo's assertion that the Constitution requires particularized warnings when a defendant seeks to represent himself is not supported by established Supreme Court law.  Under 28 U.S.C. § 2254(d)(1), we must deny the

request for habeas relief insofar as it is premised on that assertion.

**2.**  Arrendondo next argues that, at the time of his waiver, he "simply did not have an adequate appreciation of the length of prison time that he would face upon conviction." The Supreme Court *has* clearly established that a defendant must have a general understanding of the potential penalties of conviction before waiving counsel to render that waiver valid.  *See infra* Part II.A.2.a.   It has not, however, determined whether a defendant must understand the potential penal consequences of sentencing enhancements that have not yet been charged.  *See infra* Part II.A.2.b.  And, we conclude, refusing to require such an understanding is not an unreasonable application of what little the Supreme Court has said on the matter. *See id.*  Consequently, Arrendondo's ignorance of the possibility that he could be sentenced as a habitual criminal *if* the prosecution later filed notice that it would seek such a penalty cannot be a basis for habeas relief under § 2254(d)(1).

**a.**  *Faretta*, 422 U.S. at 835, held that, "to represent himself [at trial], the accused must 'knowingly and intelligently' forgo" the right to counsel.  To qualify as knowing and intelligent, the Court continued, such a decision must be made with awareness "of the dangers and disadvantages of self-representation."  *Id*.

*Faretta* itself did not specifically address the defendant's awareness of his possible punishments.  But *Tovar*, 541 U.S. 77, did.  That case explained that a defendant, before waiving his right to counsel for the purpose of entering a guilty plea, must be aware "of the nature of the charges against him, of his right to be counseled regarding his plea, and of *the range*

*of allowable punishments* attendant upon the entry of a guilty plea." *Id.* at 81 (emphasis added); *see also Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948) (plurality opinion) (stating that a valid waiver of counsel for the purpose of entering a guilty plea requires "an apprehension of . . . the range of allowable punishments," among other matters).[2]

The requirement recounted in *Tovar* complements the requisites for a valid waiver of the right to counsel described in *Faretta*.[3] As the common law of torts long ago recognized, the rational calculation of risk requires multiplying the magnitude of a threatened loss by the probability of its

---

[2] *Von Moltke* was a plurality opinion, which *Faretta*, 422 U.S. at 835, cited for support. Typically, the holding of such a decision is "that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 198 (1977) (internal quotation marks and citation omitted). Justices Frankfurter and Jackson concurred in the judgment of the *Von Moltke* plurality on the ground that the validity of the defendant's waiver depended on the resolution of questions of credibility, and that remand was therefore necessary for further findings of fact. *Von Moltke*, 332 U.S. at 729–31 (Frankfurter, J., concurring in the judgment); *see also id.* at 727 (plurality opinion) (remanding for the reasons described in Justice Frankfurter's separate opinion). The *Von Moltke* plurality opinion, however, has been cited by the Supreme Court as that of the Court, albeit with the "*cf.*" signal, but no note of its plurality character. *See Patterson*, 487 U.S. at 298. The Eighth Circuit has relied on *Von Moltke* as clearly established Supreme Court law. *See Shafer v. Bowersox*, 329 F.3d 637, 651 (8th Cir. 2003). We need not further evaluate *Von Moltke*'s independent authority as clearly established Supreme Court law, because *Tovar* clearly establishes that a defendant waiving counsel must understand "the range of allowable punishments attendant upon the entry of a guilty plea." 541 U.S. at 81.

[3] Decades before *Tovar*, we adopted a similar requirement in our cases on direct review. *See, e.g.*, *United States v. Harris*, 683 F.2d 322, 324–25 (9th Cir. 1982).

occurrence. *See United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947). *Tovar* supplies the first of these terms; *Faretta*, the second. By requiring awareness of the range of possible penalties, *Tovar* ensures that defendants understand the magnitude of the loss they face. *Faretta*, meanwhile, emphasizes awareness of "the dangers and disadvantages *of self-representation*" — that is, the specific, tactical liabilities of going to trial without trained counsel. *Faretta*, 422 U.S. at 835 (emphasis added). That knowledge relates to the probability that a defendant will be convicted, not the consequences of conviction. In short, the requirements of *Faretta* and *Tovar* enrich one another. Taken together, they outline the minimum necessary knowledge for a defendant to calculate knowingly and intelligently the risk of proceeding to trial pro se.

*Tovar*'s statement concerning the defendant's knowledge of possible punishments is clearly established Supreme Court law, and was at the time of the Court's decision on the merits. *Tovar* stated: "We *hold* . . . . [that t]he constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of *the range of allowable punishments* attendant upon the entry of a guilty plea." *Tovar*, 541 U.S. at 81 (emphases added). An express holding is clearly established Supreme Court law for purposes of 28 U.S.C. § 2254(d)(1). *See, e.g.*, *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). Moreover, the defendant's understanding of his potential punishment was included in *Tovar*'s reasoning; the opinion affirmatively highlighted the fact that the defendant "has never claimed that he did not fully understand . . . the range of punishment for the crime . . . ." 541 U.S. at 92.

*Tovar*, unlike this case, concerned an uncounseled guilty plea, not a defendant who represented himself at trial. But *Tovar* addressed the relationship between waiver at the plea phase and waiver at trial, stating that at the plea stage, "a *less* searching or formal colloquy" is needed to gauge the defendant's knowledge than is necessary with regard to waiver of trial counsel. *Tovar*, 541 U.S. at 89 (emphasis added) (citing *Patterson*, 487 U.S. at 299). This difference is "not because pretrial proceedings are 'less important' than trial, but because, at that stage, 'the full dangers and disadvantages of self-representation . . . are *less substantial and more obvious* to an accused than they are at trial.'" *Tovar*, 541 U.S. at 90 (emphasis added) (quoting *Patterson*, 487 U.S. at 299).

The risk calculation involved in determining whether to represent oneself at trial differs from that at the plea stage with regard to the number of tactical dangers of proceeding without counsel — that is, the probability that proceeding without counsel will affect the outcome. But there is no difference at all in the two circumstances with regard to the other component of risk calculation — namely, knowledge of the magnitude of the risk faced. And, given the Court's express declaration that the requirements for a guilty plea waiver of counsel are *less* rigorous than those applicable to a trial waiver, excising any of *Tovar*'s requirements in the trial context would be an unreasonable interpretation of clearly established Supreme Court law.

**b.**   Here, the trial court informed Arrendondo of the maximum penalties carried by conviction for the charged offenses, possession of a stolen vehicle and possession of stolen property, and Arrendondo confirmed that he understood the court's statement. *See* Nev. Rev. Stat.

§§ 205.273(4), 205.275(2)(c). We generally presume that defendants seeking to waive their right to counsel understand what they are told regarding that choice. *See, e.g.*, *Patterson*, 487 U.S. at 296; *United States v. Mohawk*, 20 F.3d 1480, 1484 (9th Cir. 1994). In holding valid Arrendondo's waiver of counsel, the Nevada Supreme Court noted, correctly, that Arrendondo's understanding of his potential penal exposure accurately reflected the charging documents before the trial court at the time of his waiver.

Arrendondo contests that conclusion on the ground that he was unaware of the potential for a greater penal exposure under Nevada's habitual criminal statute, Nev. Rev. Stat. § 207.010, with which he had not yet been charged when he waived his right to counsel.[4] And he maintains that without knowledge of that exposure, his waiver of trial counsel was not knowing and intelligent. The strictures of 28 U.S.C. § 2254(d)(1) preclude us from granting habeas corpus relief on that ground.

---

[4] At the time of Arrendondo's conviction, Nevada law did not require that a defendant be charged with the habitual criminal enhancement, or with the prior convictions underlying that enhancement, prior to trial. *See* Nev. Rev. Stat. §§ 173.095, 207.016(2). At that time, the statute permitted the prosecutor to seek an enhanced sentence, at the discretion of the prosecuting attorney, *see* Nev. Rev. Stat. § 207.010(2), by filing an information after conviction but before sentencing, *see Crutcher v. Eighth Judicial Dist. Court In & For Cnty. of Clark*, 903 P.2d 823, 825–26 (Nev. 1995) (per curiam). That is what happened here.

In 2013, however, the Nevada legislature amended the relevant statutory provision to require the filing of a habitual criminal information "not less than 2 days before the start of the trial on the primary offense, unless an agreement of the parties provides otherwise or the court for good cause shown makes an order extending the time." 2013 Nev. Legis. Serv. Ch. 292, § 1 (A.B. 97) (West) (codified at Nev. Rev. Stat. § 207.016(2)).

**i.** Clearly established Supreme Court law does not require a defendant waiving his right to counsel to understand the potential application of recidivist sentencing enhancements *that had not yet been charged*, and were not required to have been charged, at the time of the waiver. Where sentencing enhancements are based solely on prior convictions, current Supreme Court case law does not require that the convictions be charged before conviction, tried to a jury, or found beyond a reasonable doubt. *See Almendarez-Torres v. United States*, 523 U.S. 224, 227–28 (1998); *see also United States v. Pacheco-Zepeda*, 234 F.3d 411, 414 (9th Cir. 2000). And the Supreme Court has never held that a defendant's knowledge of "the range of allowable punishments," *Tovar*, 541 U.S. at 81, required for a valid waiver of counsel, includes awareness of enhanced sentencing options premised on such prior convictions, the application of which can only result from an act of prosecutorial discretion that *may* be exercised *after* trial and conviction. *Tovar* does not address the question, nor does any subsequent Supreme Court decision. "Therefore, no 'specific legal rule' on this issue has been 'squarely established by th[e] Court.'" *John-Charles v. California*, 646 F.3d 1243, 1249 (9th Cir. 2011) (alteration in original) (quoting *Richter*, 131 S. Ct. at 786). The Nevada Supreme Court's rejection of Arrendondo's knowing and voluntary waiver argument, to the extent it rested on the circumstance that the enhancements had not been charged at the time the waiver occurred, was thus not contrary to clearly established Supreme Court law. *See* 28 U.S.C. § 2254(d)(1).

**ii.** Section 2254(d)(1) permits habeas relief not only where a state court decision is inconsistent with clearly established Supreme Court law, but also where its decision "involved an unreasonable application of[] clearly established . . . law." "[T]he lack of a Supreme Court decision on nearly

identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme] Court's cases can supply such law," *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)), if the "unreasonable application" standard is met.

A state court applies a clearly established standard unreasonably only if no "reasonable interpretation of the controlling [Supreme Court] standard" can "support [the state court's] legal ruling." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). So, when evaluating the reasonableness of a state court's application of a general standard, we must defer to any "principled reason for the state court to distinguish between the case before it and Supreme Court precedent." *Murdoch v. Castro*, 609 F.3d 983, 992 (9th Cir. 2010) (en banc). Moreover, § 2254(d)(1), the Supreme Court recently explained,

> does not require state courts to *extend* [a Supreme Court] precedent or license federal courts to treat the failure to do so as error. Thus, "if a habeas court must extend a rationale before it can apply to the facts at hand," then by definition the rationale was not "clearly established at the time of the state-court decision." AEDPA's carefully constructed framework "would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law."

*White*, 134 S. Ct. at 1706 (internal citations omitted) (quoting *Yarborough*, 541 U.S. at 666).

Applying these standards, we hold that it was not unreasonable for the Nevada Supreme Court to rest its denial of Arrendondo's knowing and voluntary waiver claim in part on the circumstance that the enhancements had not been charged, or otherwise presaged, at the time of the waiver. Requiring pretrial knowledge of the potential for such later enhancements would extend *Tovar*'s requirement to circumstances not addressed by that case, which 28 U.S.C. § 2254(d)(1) would permit only if all reasonable interpretations of *Tovar* would so require. *See White*, 134 S. Ct. at 1706. That is not the case here.

First, as to whether "'fairminded jurists *could* disagree' on the correctness of" the Nevada Supreme Court's limitation on the knowledge a defendant must possess to waive counsel, *Richter*, 131 S. Ct. at 786 (emphasis added) (quoting *Alvarado*, 541 U.S. at 664), there is a substantial argument that fairminded jurists already *have* endorsed that limitation, *cf. John-Charles*, 646 F.3d at 1250 (concluding that a rule was not unreasonable where several circuits, including our own, have already adopted it). The plurality opinion in *Von Moltke*, 332 U.S. 709, on which *Faretta* partially relied, in terms requires a defendant waiving counsel to be aware only of the possible consequences of the *charged* offenses. That opinion conditioned waiver of counsel, for the purpose of an uncounseled guilty plea, on a defendant's "apprehension of the nature of the charges, the statutory offenses included within them, [and] *the range of allowable punishments thereunder* . . . ." *Id.* at 724 (emphasis added).[5] Punishment

---

[5] The adverb "thereunder" is referential. "'Where no contrary intention appears,'" such a referential word "'refer[s] solely to the last antecedent.'" *May Trucking Co. v. Oregon Dept of Transp.*, 388 F.3d 1261, 1268 (9th Cir. 2004) (quoting *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307,

authorized by separate statutory provisions upon the filing of a separate information was thus beyond the knowledge required by the *Von Moltke* plurality. The necessary implication was that a defendant seeking to waive counsel for the purpose of entering a plea need not be aware of possible penal exposure under charges the state has not yet brought.[6]

The "fairminded jurist" standard focuses "on application of law rather than on counting noses," *Doody v. Ryan*, 649 F.3d 986, 1007 n.6 (9th Cir. 2011) (en banc), so we must evaluate the substance of the distinction the Nevada Supreme Court relied on here. In doing so, we conclude that there are

---

1311 (9th Cir. 1992)); *cf. Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). In the quotation from *Von Moltke*, "thereunder" refers to the statutory offenses included within the charges faced by the defendant. The full clause, then, requires knowledge of "the range of allowable punishments" under the statutory offenses with which the defendant has been charged.

[6] We note, without adopting the result as our own, that the Fourth Circuit resolved a similar question in the "analogous context"of the knowledge a defendant must possess to plead guilty, *Gerritsen*, 571 F.3d at 1009, holding that it is not unreasonable to determine that ignorance as to uncharged recidivist sentencing enhancements does not render the waiver of counsel invalid, *see Appleby v. Warden, N. Reg'l Jail & Corr. Facility*, 595 F.3d 532, 541 (4th Cir. 2010). To be valid, a guilty plea "not only must be voluntary but must be [a] knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). That standard, in turn, requires a defendant waiving his right to trial to be "fully aware of the direct consequences" of his plea." *Id.* at 755 (internal quotation marks omitted). The Fourth Circuit held not an unreasonable application of Supreme Court law, under 28 U.S.C. § 2254(d)(1), the West Virginia Supreme Court of Appeals' determination that a defendant's guilty plea is valid notwithstanding his ignorance of the potential application of an enhanced sentence, which had not yet been charged at the time of the plea, under West Virginia's recidivist offender statutes. *See Appleby*, 595 F.3d at 541.

principled bases on which one could decide that the *Tovar* right is limited to charges filed at the time of waiver of counsel, at least with regard to enhancements, such as recidivist enhancements, that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny do not require to be charged before trial and tried to a jury.

As is often the case in federal court, prior convictions may not be identified before trial, before the waiver of counsel, or before the entry of a guilty plea. *Cf. e.g.*, *United States v. Barrios-Gutierrez*, 255 F.3d 1024, 1027 (9th Cir. 2001) (en banc). Where a defendant is in the process of waiving counsel, he is likely, as here, to be reliant on the trial court for his knowledge of the range of permissible punishments, as his own lawyer is on the sidelines at this juncture. At best, the trial court likely could provide, and the defendant could obtain, contingent and general information about the possibility of greater penal exposure due to a potentially applicable recidivist enhancement: The defendant could learn that, depending on the nature of his prior convictions, and *if* the prosecutor decides subsequently to seek recidivist sentencing, his penal exposure could increase, although it may not be possible to say with any clarity what that exposure would be. Reasonable jurists could conclude that such vague and contingent knowledge about additional charges that might or might not be brought is unlikely to affect the choice of an otherwise determined defendant to proceed without counsel, and so is not pertinent to the knowing and intelligent waiver inquiry.

We might well conclude otherwise, were the issue before us on direct appeal, particularly where the impact of recidivist enhancements on the defendant's penal exposure is great. The knowledge of very substantial recidivist sentencing

enhancements, even if contingent and vague, could well be sufficiently likely to affect a defendant's risk assessment in deciding whether to forego counsel to come within the *Tovar* requirement. Indeed, in *United States v. Keen* we held invalid a waiver of counsel where there was "no indication that [the defendant] was aware of the enhanced penalty he faced as a result of [his] prior convictions under the armed career criminal provisions of 18 U.S.C. § 924(e)," along with several other problems. 104 F.3d 1111, 1116 (9th Cir. 1996).[7] And, in the "analogous context" of the knowledge a defendant must possess to plead guilty under Federal Rule of Criminal Procedure 11, *Gerritsen*, 571 F.3d at 1009, our cases indicate that knowledge of potential recidivist enhancements may be necessary. Rule 11 requires an on-the-record determination that a defendant pleading guilty understands both "any maximum possible penalty" and "any mandatory minimum penalty." Fed. R. Crim. P. 11(b)(1)(H)–(I). Under that rule, we have condoned the district court's rejection of a guilty plea where a defendant was told in the plea colloquy that he faced a maximum sentence of two years, notwithstanding the potential application of a sentencing enhancement that would extend his maximum possible sentence to 20 years. *See United States v. Valenzuela-Arisqueta*, 724 F.3d 1290, 1296 (9th Cir. 2013). We have also upheld a plea colloquy advising defendants of maximum possible sentences that the indictment does not support. *See Garcia-Aguilar v. U.S. Dist.*

---

[7] Although *Keen* predates *Tovar*, the law of this Circuit already required a defendant waiving his right to counsel to understand his possible penal exposure. *See, e.g.*, *Harris*, 683 F.2d at 324. *Keen* itself recognized that a defendant must be "'aware of . . . the possible penalties'" to waive counsel. *Keen*, 104 F.3d at 1114 (quoting *Mohawk*, 20 F.3d at 1484).

*Court for S. Dist. of Cal.*, 535 F.3d 1021, 1025 (9th Cir. 2008).

Nevertheless, we "'may not issue the [habeas] writ simply because [we] conclude[] in [our] independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)). Where, as here, the defendant was carefully advised of the procedural risks of foregoing representation by counsel, and also knew of his substantial penal exposure under the charges already filed, it was not unreasonable for the Nevada Supreme Court to conclude that he waived his right to counsel knowingly and intelligently.

**B.**

A defendant's waiver of counsel must not only be knowing and intelligent, it must also be voluntary. *See Faretta*, 422 U.S. at 835; *Patterson*, 487 U.S. at 292 n.4. Arrendondo argues that his decision to forego representation, even if knowing and intelligent, was not voluntary, "because he was forced to choose between incompetent, unprepared, and ineffective counsel versus self-representation." Arrendondo's argument fails on the facts, as he has not established that his trial counsel was constitutionally inadequate. We therefore need not, and do not, consider whether his legal theory, if supported by the facts, would entitle him to relief.

When unconstrained by 28 U.S.C. § 2254(d)(1), our cases do indicate that a *Faretta* waiver is involuntary *if* the alternative is constitutionally inadequate counsel. *See Crandell v. Bunnell*, 25 F.3d 754, 755 (9th Cir. 1994) (per

curiam); *United States v. Robinson*, 913 F.2d 712, 715–16 (9th Cir. 1990). Electing self representation over unsatisfactory — but constitutionally sufficient — counsel does not make a defendant's waiver of counsel involuntary. *See Robinson*, 913 F.2d at 715–16. Even if Supreme Court law has clearly established this standard — and we do not decide whether it has — Arrendondo has not factually satisfied it.

On collateral attack, a habeas petitioner contesting the validity of his waiver of counsel shoulders the burden of proof. *See Tovar*, 541 U.S. at 92; *Johnson v. Zerbst*, 304 U.S. 458, 468–69 (1938); *United States v. Lenihan*, 488 F.3d 1175, 1177 (9th Cir. 2007) (per curiam). To establish the constitutional inadequacy of counsel, Arrendondo must demonstrate that his attorney was burdened by an actual conflict of interest, *Cuyler v. Sullivan*, 446 U.S. 335, 348–49 (1980), or that his attorney's performance was both objectively deficient and prejudicial, *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).

Arrendondo does not begin to meet this burden. He notes in his briefing only that he and his last public defender, Lynch, had limited contact as they prepared for trial and that, shortly before his waiver, Arrendondo complained that he "'wants motions and writs filed.'" The habeas record contains no information at all concerning what "motions and writs" he wanted filed, so it is impossible to evaluate whether they had any chance of success, or whether a competent lawyer could have had a tactical or strategic reason for not filing them. *See Richter*, 131 S. Ct. at 790. Without a fuller understanding of the scope of Lynch's preparations or the type of "motions and writs" Arrendondo desired, it is

impossible to evaluate the adequacy of Lynch's representation or its effect upon Arrendondo's case.

What little evidence *is* included in the record cuts against Arrendondo. In a pro se Motion to Dismiss Counsel, filed in the weeks leading up to trial, Arrendondo alleged that Lynch had failed to appear at a hearing to consider Arrendondo's Motion for Bail Reduction, leaving him "without anyone to argue my position." The record does not include a transcript of that hearing, but court minutes reveal that public defender Jannette Reyes-Speer appeared on Arrendondo's behalf, contradicting any claim of abandonment. Moreover, at a subsequent hearing to consider Arrendondo's Motion to Dismiss Counsel, the court emphatically denied that Lynch's absence had affected its decision on the bail-reduction motion. "It wouldn't have mattered if it would have been Ms. Lynch or someone else standing there," the court explained. "The same facts apply." Thus, no possibility of *Strickland* prejudice could be established.

Last, Arrendondo's Motion to Dismiss Counsel asserted the existence of what Arrendondo termed a "conflict of interest." The claim is significant, because demonstrating "that an actual conflict of interest adversely affected his lawyer's performance" would relieve Arrendondo of the burden of showing prejudice. *Sullivan*, 446 U.S. at 34. But, in support of this claim, Arrendondo alleges not a conflict of interest but instead strategic differences between Arrendondo and his lawyer — namely, Lynch's advice that Arrendondo enter into a plea agreement. No actual conflict of interest appears on the record.

In short, Arrendondo has not established that he was required to choose between constitutionally inadequate

counsel and self-representation.  His claim of involuntary waiver thus fails for lack of proof, whatever the merits might otherwise be.

## III.

The district court dismissed Arrendondo's compulsory process claim as unexhausted, for failure fairly to present an underlying *federal* theory.  Before the Nevada Supreme Court, the district court concluded, Arrendondo "argued and cited Nevada state law" alone when he asserted that the trial court erred in refusing him adequate time to produce his witnesses.  We affirm that ruling.

Usually, a state prisoner must exhaust available state remedies before a federal habeas court will consider his claim.  *See* 28 U.S.C. § 2254(b)(1)(A).  This "rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (alteration in original) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)).  Satisfying this exhaustion requirement ordinarily requires state prisoners to "'fairly presen[t]'" their federal legal theories to the state courts, so that those courts are "alerted to the fact that the prisoners are asserting claims under the United States Constitution" and thus "given the opportunity to correct alleged violations of prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (alteration in original) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  To fairly present a federal claim, a state prisoner must present to the state courts both the operative facts and the federal legal

theories that animate the claim. *See Gray v. Netherland*, 518 U.S. 152, 162–63 (1996); *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005). Because Arrendondo's brief before the Nevada Supreme Court focused exclusively on state law, he failed to present his compulsory-process claim as a federal claim.

**1.** Arrendondo argues that his inclusion of a reference to *Harris v. State*, 942 P.2d 151 (Nev. 1997), in his brief before the Nevada Supreme Court satisfies the fair presentation requirement. "[F]or purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

Nevertheless,

> [f]or a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where . . . the citation to the state case has no signal in the text of the brief that the petitioner raises federal claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented.

*Casey v. Moore*, 386 F.3d 896, 912 n.13 (9th Cir. 2004); *accord Fields v. Waddington*, 401 F.3d 1018, 1022 (9th Cir. 2005). *Casey* refused to recognize any such "signal" where the relevant brief never used the word "federal"; "did not refer expressly to the federal constitution or to any of its

provisions"; and "did not indicate in parentheticals or elsewhere whether the[] state cases [the brief did cite] discussed the federal constitution." 386 F.3d at 911–12. Arrendondo's brief before the Nevada Supreme Court is similarly barren of any such textual reference to federal law on compulsory process. Arrendondo's citation of that decision thus did not fairly present his federal claim to the Nevada Supreme Court.

**2.** Arrendondo endeavors to fill the briefing gap with the observation that his pro se Motion to Dismiss Counsel, filed several months after his opening brief, alerted the Nevada Supreme Court to the federal component of his claim. Arrendondo introduced his complaints about the performance of his appellate counsel, which were unrelated to counsel's failure to argue the federal components of his claim, with an extended quotation from *United States v. Nobles*, 422 U.S. 225, 231 (1975).

Had Arrendondo included *Nobles* in his briefs, it might have satisfied the fair-presentation requirement. That requirement may be satisfied "by citing . . . a case deciding [a sufficiently similar] claim on federal grounds." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).[8] But the *Nobles* citation appeared in a collateral pro se motion, not in the merits brief filed by counsel. "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim

---

[8] Nevertheless, "[m]ere 'general appeals to broad constitutional priciples, such as due process, equal protection, and the right to a fair trial,' do not establish exhaustion." *Castillo*, 399 F.3d at 999. Thus even if *Nobles* were included in Arrendondo's merits briefs, we would have to analyze the specificity with which it analyzed the relevant issues — an analysis we do not undertake here.

to the appropriate state court*s* (plural) in the manner required by the state courts." *Casey*, 386 F.3d at 915–16. That usually means "present[ing] his federal, constitutional issue before the . . . [state courts] within the four corners of his appellate briefing." *Castillo*, 399 F.3d at 1000. A pro se procedural motion unrelated to the substantive merits of Arrendondo's claim briefed by counsel is not part of the "appellate briefing" for purposes of the *Castillo* "four corners" requirement. Nor do we have any basis for concluding that the Nevada Supreme Court would nonetheless have considered on the merits a citation in a collateral procedural motion filed months before, pro se, by a represented defendant. *See* Nev. R. App. P. 28(a)(9); *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 n.3 (Nev. 2011).

**3.** Last, Arrendondo asserts that the Nevada Supreme Court's reference to *Harris* in the decision rejecting his appeal demonstrates that the Nevada Supreme Court "was aware of the federal constitutional basis of the claim," so the question whether he properly raised the issue does not matter.

The legal premise of this argument is correct. "[T]here is no point in asking whether a state court had a 'full and fair opportunity to resolve federal constitutional claims' when the state court in fact did so." *Sandgathe v. Maass*, 314 F.3d 371, 377 (9th Cir. 2002) (quoting *O'Sullivan*, 526 U.S. at 845); *see also Ybarra v. McDaniel*, 656 F.3d 984, 991 (9th Cir. 2011); *Casey*, 386 F.3d at 916 n.18. "Where a [state] court has in fact ruled on a claim, there is no possibility of 'friction between the state and federal court systems.'" *Sangathe*, 314 F.3d at 377 (alteration in original) (quoting *O'Sullivan*, 526 U.S. at 845).

In *Sandgathe*, however, the last reasoned state court opinion "explicitly ruled on the federal constitutional issue[]," such that the claim was exhausted. *Id.* at 378; *see also Ybarra*, 656 F.3d at 991 (holding it "clear from the record that the Nevada Supreme Court did in fact rule on the merits" of the relevant claim). Here, in contrast, the Nevada Supreme Court did not expressly pass on the merits, under federal law, of Arrendondo's claim that the trial court denied him adequate time to produce his witnesses. And it cited *Harris* in support of the proposition that "a district court has no duty to assist a proper-person in subpoenaing witnesses," not to resolve a question of federal law. Such a citation does not indicate that the Nevada Supreme Court considered a federal argument never fairly presented to it.

**4.** In the alternative, Arrendondo asks us to excuse his failure to exhaust the compulsory-process claim because his appellate counsel was constitutionally ineffective.

"[C]ause . . . and actual prejudice" will excuse a state prisoner's default of "his federal claims in state court pursuant to an independent and adequate state procedural rule," and constitutionally ineffective assistance of counsel qualifies as cause. *Coleman v. Thompson*, 501 U.S. 722, 750, 752 (1991). Although "[p]rocedural default and failure to exhaust are different concepts," a failure to exhaust may result in a procedural default. *Sandgathe*, 314 F.3d at 376; *see also Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005). Such a default may occur if it is no longer possible under state law to pursue the claim that a petitioner failed to exhaust. *See Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir.

2002).**[9]**  If that were the case here, then demonstrating the ineffective assistance of Arrendondo's appellate counsel and consequent prejudice would excuse Arrendondo's procedural default.  *See Coleman*, 501 U.S. at 750, 752.  But to assert such an excuse in a federal habeas petition, a state prisoner must first exhaust in state court the claim that his appellate counsel was constitutionally inadequate.  *See Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988).

Here, Arrendondo did not bring a state post-conviction petition raising either his compulsory process claim on the merits or a claim of ineffective assistance of his appellate counsel with respect to the compulsory process issue.  Both paths were open to him, but he took neither.  Pursing on post-conviction review his federal compulsory process claim and his claim of ineffective assistance of appellate counsel would have exhausted both, notwithstanding the alleged failures of his appellate counsel.

Arrendondo's failure to raise either claim in state post-conviction proceedings bars consideration of his compulsory process claim now.  Had Arrendondo sought post-conviction relief on the claims, we would have been able to address the compulsory process claim if it were cognizable in state court on post-conviction review, and we could have considered whether his appellate counsel was ineffective in not raising the federal compulsory process claim.  If we concluded that appellate counsel was inadequate and that the inadequacy

---

**[9]** "Properly exhausted claims may also be procedurally defaulted.  If a state court determines that a claim is procedurally barred, we are precluded from reviewing the merits of the claim if the procedural bar is adequate and independent."  *Beaty*, 303 F.3d at 987.

actually prejudiced Arrendondo, we could have addressed the compulsory process claim on the merits even if the state courts would not do so because of a procedural default. In the absence of any state post-conviction petition on either of the two related claims, however, we are entirely precluded from hearing his compulsory process claim on the merits, as Arrendondo did not pursue the claims through all available state procedures. *See* 28 U.S.C. § 2254(b).[10]

## IV.

For the reasons above, we AFFIRM the district court's judgment on the merits, holding the Nevada Supreme Court's ruling on the validity of Arrendondo's waiver of the right to counsel not unreasonable. And we AFFIRM the district court's dismissal of Arrendondo's compulsory process claim.

**AFFIRMED.**

FERNANDEZ, Circuit Judge, concurring:

I concur in the result reached by the majority.

I agree that no clearly established Supreme Court law requires a district court to do more than inform a defendant of the maximum penalties for the offenses he was charged with at the time he decided to represent himself. *See Faretta v.*

---

[10] Arrendondo also asserts that the Nevada's failure to oppose this argument in its answering brief amounts to an implied concession. But Nevada may only waive the exhaustion requirement expressly, *see* 28 U.S.C. § 2254(b)(3), which it has not done here.

*California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562 (1975); *see also Iowa v. Tovar*, 541 U.S. 77, 87–94, 124 S. Ct. 1379, 1387–90, 158 L. Ed. 2d 209 (2004). Similarly, I agree that there is not a sufficient basis for extending the Court's prior holdings regarding advice on maximum penalties to the issues presented in this case. *See White v. Woodall*, ___ U.S. ___, ___, 134 S. Ct. 1697, 1705–07, 188 L. Ed. 2d 698 (2014). Moreover, Arrendondo did not exhaust his compulsory process claim in the courts of Nevada, and I agree that his failure to do so bars our consideration of that claim.

However, I am reluctant to rule on issues that are not necessary to our decision or to engage in lengthy discussions or musings that need not be pursued at this time. Indeed, I see great danger when we say more than is required to decide the case before us; our doing so may well create unintended reefs that others must navigate in the future if they are to avoid disaster. For example, I find much of the discussion contained in part II.A.2.a. essentially unnecessary, and that the conclusion that any *Tovar* requirement must apply in the trial context (whatever that means for the whole period from the beginning of a case to its termination) is especially unnecessary and problematic. Similarly, I see no need to speculate about what we might or might not do if this were a direct appeal, as the majority does at pages 25–27. And, I see no need to opine on what we could or would do had Arrendondo presented his case in a different manner in the state courts. *See* page 35–36 of the majority opinion.

In short, while I wholeheartedly agree in the result and in the analysis necessary to the result, I am not willing to run the risk of unintended consequences that comes from saying too much. I, therefore, do not join in the majority's divagations

and unnecessary assertions. Thus, I respectfully concur in the result only.